The AMERICAN CIVIL LIBERTIES UN-
ION OF WEST TENNESSEE, INC.
and Mary Wilder, Plaintiffs,

v.

Wyeth CHANDLER, Mayor of the City
of Memphis, and the City of
Memphis, Defendants.

No. 78–2412.

United States District Court,
W. D. Tennessee, W. D.

Aug. 17, 1978.

Thomas M. Daniel, G. Philip Arnold, Memphis, Tenn., for plaintiffs.

Clifford D. Pierce, Jr., City Atty., Arthur J. Shea, Deputy City Atty., Michael C. Speros, Asst. City Atty., Memphis, Tenn., for defendants.

## ORDER ON APPLICATION FOR PRELIMINARY RELIEF

WELLFORD, District Judge.

This is an action under 42 U.S.C. § 1983 for damages and injunctive relief arising out of a nighttime curfew imposed in the City of Memphis during August of 1978. Plaintiffs claim that the curfew and the City Ordinance upon which it is based, both on its face and as applied, deny their rights under the First Amendment, including travel, speech and assembly.

The complaint was filed on August 15, 1978, while the curfew was in effect; at the same time plaintiffs filed a motion for a temporary restraining order seeking to restrain the operation of the curfew. On short notice counsel for defendants appeared, and after a preliminary hearing the Court concluded that an insufficient basis existed for the extraordinary relief sought by the plaintiffs and they failed to carry their burden at that time, and the motion for an immediate temporary restraining or-

der was denied in balancing the equities and considering likelihood of success on the merits.

 Based upon the legal authorities available at the time of the hearing, there was serious doubt that plaintiffs would succeed on the merits. See *State v. Dobbins*, 277 N.C. 484, 178 S.E.2d 449 (1971), discussed in 59 A.L.R.3d at 333, and *United States v. Chalk*, 441 F.2d 1277 (4th Cir.), cert. den. 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971). Freedoms of travel and speech may be subject to reasonable limitations as to time and place, and under appropriate circumstances a nighttime curfew may be a lawful and effective means of controlling or preventing imminent civil disorder.

At the time of the preliminary hearing this Court was of the opinion that the legal issues involved were of a such a serious and difficult nature that they could not be resolved on short notice. The Court set a further hearing for the parties after an opportunity for the defendants to be prepared with regard to the motion for immediate extraordinary relief. Chief Judge Bailey Brown was designated to preside at the further hearing because of the necessary absence of Judge Wellford at that time. After consideration of the matters submitted, the Court entered the following findings and conclusions:

## ORDER ON APPLICATION FOR PRELIMINARY RELIEF
### (Brown, Chief Judge)

This cause came on for hearing on plaintiffs' application for a temporary restraining order and a preliminary injunction, restraining defendants from enforcing a curfew imposed in the City of Memphis in response to a strike by Memphis police officers. After carefully considering the pleadings, the proof adduced at the hearing of this matter, and the arguments of the parties, we have concluded that the extraordinary relief sought must be denied.

## BACKGROUND

At approximately 11:00 p. m. on August 10, 1978, members of the Memphis Police Association, a union representing Memphis police officers, began a strike. Most of the policemen and police sergeants who are normally responsible for patrolling and providing police protection in the City joined in this strike. Beginning at 11:00 that night, and apparently continuing into the early morning hours of August 11, these striking officers picketed police stations, damaged some City property, blocked access to the stations, and threatened officers remaining on duty with bodily harm.

On the morning of August 11, in response to the police strike, the threat of a firemen's strike, and the threat of serious public disorder, Mayor Wyeth Chandler proclaimed a state of civil emergency and imposed a general curfew between the hours of 8:00 p. m. and 6:00 a. m. The declared state of emergency and the curfew remain in effect, although the curfew has been modified to run from 10:00 p. m. until 6:00 a. m.

The instant action was brought by Mary Wilder and the American Civil Liberties Union of West Tennessee, Inc. on August 15. They seek injunctive and declaratory relief, as well as damages, for the claimed violation of rights guaranteed Wilder, the ACLU, and the members of the ACLU under the first, fourth, fifth, ninth, and fourteenth amendments to the Constitution of the United States. It is their contention that the ordinance under which Chandler acted in imposing the curfew is unconstitutional on its face, and as applied, and that Chandler failed to act in accordance with the terms of the ordinance in proclaiming the emergency and ordering the curfew.

## STANDING

 It is the opinion of the court that plaintiffs clearly have standing to bring this action for relief from restrictions on the exercise of their first amendment rights to freedom of speech, freedom of assembly, and freedom to move about on the public streets. These liberties, which the complaint alleges are exercised by Wilder, by the ACLU, and by the ACLU's individual

members, are at the very heart of the scheme of ordered liberty designed by our constitutional forebears. They have traditionally, for good reason, been accorded special protection by the courts. The government may only limit or abridge the exercise of these rights in narrowly defined circumstances. The fact that the curfew has the effect of limiting the exercise of these rights, coupled with the plaintiffs' intention to continue to exercise such rights, is sufficient to show the type of injury in fact necessary for standing. *Warth v. Seldin*, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975).

## LIKELIHOOD OF SUCCESS ON THE MERITS

In considering an application for preliminary injunctive relief, the court must consider the degree of likelihood that the applicant will prevail at the plenary hearing on the merits. In this case, we must consider whether it is likely that plaintiffs will ultimately be successful on any of the theories they have advanced.

### Constitutionality of the Ordinance on Its Face

In declaring the civil emergency and imposing the curfew, the Mayor acted under Memphis City Code § 22–91 et seq., the pertinent parts of which are reproduced in the margin.[1]

The exercise of the mayor's power to order curfews and other restrictions is limited to those instances in which he has proclaimed a civil emergency. In turn, the power to proclaim such emergencies is nar-

---

1. Sec. 22–91. Definitions.

 (a) *Civil Emergency.* A civil emergency is defined to be:

 (1) A riot of unlawful assembly characterized by the use of actual force or violence or a threat to use force if accompanied by the immediate power to execute by three (3) or more persons acting together without authority of law.

 (2) Any natural disaster or man-made calamity including but not limited to flood, conflagration, cyclone, tornado, earthquake or explosion within the geographic limits of a municipality resulting in the death or injury of persons, or the destruction of property to such an extent that extraordinary measures must be taken to protect the public health, safety and welfare.

 (3) The destruction of property, or the death or injury of persons brought about by the deliberate acts of one or more persons acting either alone or in concert with others when such acts are a threat to the peace of the general public or any segment thereof.

 (b) *Curfew.* Curfew is hereby defined as a prohibition against any person or persons walking, running, loitering, standing or motoring upon any alley, street, highway, public property or vacant premises within the corporate limits of the municipality except persons officially designated to duty with reference to said civil emergency or those lawfully on the streets as defined hereinafter.

 (c) *Substitute officer.* Substitute officer is hereby defined as an official who shall act in the absence or inability to act of the mayor as provided in this chapter and article in cases of civil emergencies. (Ord. No. 170, § 1, 5–14–68; Ord. No. 1226, § 1, 4–11–72).

 Sec. 22–92. Written declaration by mayor.

 When in the judgment of the mayor a civil emergency as defined herein is determined to exist, he shall forthwith proclaim in writing the existence of same, a copy of which proclamation will be filed with the comptroller. (Ord. No. 170, § 2, 5–14–68).

 Sec. 22–93. General curfew, duration.

 After proclamation of a civil emergency by the mayor he may order a general curfew applicable to such geographical areas of the municipality or to the municipality as a whole, as he deems advisable, and applicable during which hours of the day or night as he deems necessary in the interest of the public safety and welfare. Said proclamation and general curfew shall have the force and effect of law and shall continue in effect until rescinded in writing by the mayor but not to exceed fifteen (15) days.

 Provided, however, that, until overruled by final decision of a court of last resort, the provisions of this section shall apply only to a general curfew applicable to the municipality as a whole and may not be applicable only to such geographical areas of the municipality as the mayor deems advisable, but should this sentence be found improper by said court of last resort, then, in that event, this sentence will be considered as having not been passed, such being the legislative intent of the council. (Ord. No. 170, § 3, 5–14–68; Res. of 5–14–68).

 Additional sections allow the mayor to restrict the sale of liquor, beer, gasoline, and firearms, and provide that violation of the mayor's orders under the ordinance constitutes a misdemeanor punishable by a fine not exceeding fifty dollars.

rowly limited to situations involving riots or unlawful assemblies characterized by violence or an imminent threat of violence; extraordinary disasters; and instances where deliberate acts of destruction or personal injury pose a threat to the public at large.

While first amendment rights, as we have previously noted, are accorded special protection, they are not absolute. The ordinance at issue here permits a limitation on the exercise of such rights only in very unusual circumstances where extreme action is necessary to protect the public from immediate and grave danger. Additionally, the ordinance is not designed to regulate in any way, nor would it appear to have the effect of regulating, the content of speech or other form of expression. Rather, it is a regulation of conduct, not designed to limit or control the expression of ideas, which unfortunately has an incidental impact on the exercise of first amendment rights.

The court considers it highly unlikely that the ordinance will ultimately be found unconstitutional on its face.

### Compliance with the Ordinance

Plaintiffs have contended that Chandler acted beyond his authority under the ordinance, in declaring a state of civil emergency and a curfew. We believe it likely that Chandler acted within his authority as mayor, under this ordinance.

Under § 22–91(a)(3), the mayor may declare a civil emergency when, in his judgment, the deliberate acts of one or more persons have caused property damage, death, or injury, and such acts constitute a threat to the peace of the public.

The police had begun their strike the night before Chandler issued his proclamation. On that night, the strikers had picketed several police stations. As patrolmen returned to the stations following the completion of their shifts, they joined the strikers. Access to the stations was blocked by police cars which were parked across driveways. These vehicles and others were disabled by the striking officers, who slashed tires, locked the keys to the vehicles in their trunks, and left lights and other electrical equipment on to run down batteries. The strikers also carried weapons, and threatened persons who attempted to cross their picket lines with bodily harm.

At the end of the night, roughly 950 policemen and sergeants were on strike. This left approximately 200 supervisory personnel and a handful of non-striking policemen to protect police stations and property, and to provide regular police protection for the City.

Additionally, on the morning of August 11, Chandler was aware of the threat of a renewed strike by Memphis firemen. During the first day of the firemen's earlier strike in July, 1978, over 200 fires occurred throughout Memphis. This number greatly exceeded the normal number of fires to be expected. These fires caused severe and widespread property damage.

We believe that the Mayor could have determined on August 11 that the acts of the striking policemen in disabling police vehicles, and preventing other members of the police force from engaging in their usual duties as policemen, would leave Memphis with entirely inadequate police protection, and that this situation could be expected to lead to virtually unrestrained criminal activities throughout the City. Additionally, we believe that once he had determined that the property damage and other acts of the striking policemen threatened the public peace, he could also have considered a variety of other factors, such as the possibility of a firemen's strike with consequences as severe as those of the July strike, in deciding whether to exercise his emergency and curfew powers.

Under the facts recited above, we also consider it quite likely that Chandler could have acted within the terms of § 22–91(a)(1). Such action would, of course, be based on the assemblies of police picketers during the previous night, and their actual acts of violence, or threatened and imminent use of force.

## Constitutionality of the Ordinance as Applied

■ There can be no question that, in ordinary circumstances, the imposition of a general curfew would unconstitutionally abridge rights guaranteed by the first amendment. The circumstances presented in this case are clearly not ordinary circumstances. It therefore becomes our duty to determine whether it is likely that on the facts presented, the curfew could constitutionally be imposed.

■ As noted above, the situation which the City faced on August 1 was a grave one. The loss of most of the City's police force, coupled with the striking officers' attempts to prevent others from assuming their duties through damaging police equipment and through intimidation, presented a very real emergency. The threat of damage by fire should the firemen strike again was serious.

Furthermore, events subsequent to August 11 have contributed to the state of emergency. The firemen have, in fact, renewed their strike. A blackout, perhaps unrelated to the strikes, occurred on the night of August 15, and looting occurred in various sections of the City.

During this period of time, police and fire protection for the City has been provided by supervisory personnel, by a small number of Shelby County Sheriff's deputies, and by National Guard troops. In addition, various combinations of these three elements have been responsible for protecting police stations, fire stations, and other city installations from the strikers. The court agrees with the opinion of Mayor Chandler, Police Director Chapman, and Adjutant General Wallace that the curfew has been essential for the preservation of order.

It is the opinion of the court that the decision of the Fourth Circuit in United States v. Chalk, supra, states the law applicable here.

Certainly on the present record, we may conclude that there was a factual basis for Chandler's decision that the restrictions imposed were necessary to maintain order. It would appear to be without dispute that the Mayor acted in good faith in ordering the curfew. There is no indication that the curfew was imposed for any reason other than to maintain order; there has been no effort to employ the curfew as a subterfuge, with the intent to silence or limit free expression.

The only remaining consideration is whether the curfew has been imposed in the least restrictive manner necessary to preserve order. We note that the curfew has been imposed only during nighttime hours, when the most serious threat of crime and violence is present. As conditions have allowed, the City has modified the curfew hours so as to make them less restrictive. While plaintiffs would contend that perhaps a midnight to 6:00 a. m. curfew would be as effective as the present 10:00 p. m. to 6:00 a. m. curfew, we do not believe the record would support the substitution of the court's judgment for that of the Mayor in this regard. Nor do we believe it would be practical, as plaintiffs suggest, to limit the curfew to the areas immediately surrounding police and fire stations, nor would such a solution solve the broad dangers presented in a city with only a skeleton police force.

While the curfew which has been imposed is a drastic measure, the court cannot say at this time that a less restrictive measure would be sufficient to counter the grave dangers presented.

For all the foregoing reasons, we believe it likely that the curfew will not be found an unconstitutional application of the ordinance.

## BALANCE OF OPPOSING INTERESTS

In deciding whether to grant the equitable relief sought by plaintiffs, we must consider whether the plaintiffs will suffer some irreparable injury should such relief be denied, and whether some greater injury would accrue to the public should the injunctive relief sought be granted.

■ There can be no doubt that plaintiffs will suffer a limitation on the exercise

of their first amendment rights as long as the curfew remains in effect. By its very nature, the loss of such a right cannot be later remedied by an award of damages. However, it must be remembered that plaintiffs are free to exercise these rights during other hours of the day, and that the curfew is an emergency measure which hopefully will not long remain in effect.

Balanced against this loss is the potential injury to the public at large, should the injunction issue and the curfew be removed. The court cannot escape the conclusion that the curfew is reasonably necessary to prevent widespread lawlessness, and that the damage to the public in the absence of the curfew might well be intolerable.

We therefore believe that the probable injury to the public should the injunction issue far exceeds the irreparable but limited loss which will otherwise be suffered by plaintiffs.

## CONCLUSION

Having considered all the foregoing, it is the opinion of the court that the issuance of the preliminary injunctive relief sought by the plaintiffs would constitute an abuse of our equitable powers. The motions for a temporary restraining order or a preliminary injunction are accordingly denied.

It is so ORDERED.