# JEFFREY MOORHEAD, Plaintiff
## v.
# ALEXANDER FARRELLY, et al., Defendants

Civil Action 1989-222

District Court of the Virgin Islands

Div. of St. Croix

October 11, 1989

*Appearances*:

JEFFREY MOORHEAD, ESQ. (HODGE & SHEEN), St. Croix, V.I.

LAWRENCE ACKER, ESQ., Assistant Attorney General (Justice Department), St. Croix, V.I.

ROLAND B. JARVIS, ESQ., Assistant United States Attorney, St. Croix, V.I.

BROTMAN, *District Judge*

On October 5, 1989, this court denied plaintiff's motion for a temporary restraining order challenging Governor Alexander Farrelly's authority to enact and enforce a curfew on St. Croix. The court also set a hearing for a preliminary injuction for Wednesday, October 25, 1989. Currently before the court is defendants' motion to dismiss plaintiff's complaint. For the reasons stated within, this court will deny plaintiff's request for preliminary relief, and will grant defendants' motion to dismiss.

## I. FACTS AND PROCEDURE

Hurricane Hugo swept through the Virgin Islands on September 17–18, 1989, causing widespread devastation and destruction on the Islands. In addition to severe property damage, Hugo caused a total debilitation of communication and power on the island of St. Croix. During the storm, the majority of the island's prison population escaped or were released from custody. In the storm's aftermath, reports of widespread looting and violence were prevalent. This court takes judicial notice of the continued devastation, having first hand knowledge of the destruction of homes and buildings, the lack of power and water, and the continued difficulties in communication and travel.

On September 19, 1989, Governor Alexander Farrelly proclaimed a state of emergency to be in effect for the Virgin Islands. The Governor also issued an executive order on September 21, 1989 instituting a nocturnal curfew between the hours of 6 p.m. and 6 a.m. on the Virgin Islands to protect public safety and welfare.

Plaintiff was stopped on September 23, 1989 by FBI agents and federal marshals, who informed plaintiff that he was in violation of the St. Croix curfew. Plaintiff was traveling to visit clients and conduct his clients' and his personal affairs, including a visit to his grandmother's home to talk and pray with her.

On October 4, 1989, plaintiff filed a complaint for declaratory judgment in federal district court that Governor Farrelly's executive order imposing the curfew was unconstitutional. At the time the complaint was filed, the curfew on St. Thomas and St. John had been modified to the hours between 8 p.m. and 6 a.m.; the curfew on St. Croix remained at 6 p.m. to 6 a.m. Plaintiff alleges that enforcement of the curfew was illegal because the executive order was unconstitutionally vague and overbroad in violation of the due process clause of the fourteenth amendment. Plaintiff further alleges that the order violates his right of freedom of association, freedom of religion under the first and fourteenth amendments, freedom of speech, the due process clause of the fourteenth amendment, his right to interstate travel as guaranteed by the commerce clause of article 1, section 8, and the Virgin Islands Revised Organic Act of 1954.

Defendants raised several procedural defenses at oral argument, but the court, in considering the urgency of the matter, found it necessary to address the substantive issues raised. This court denied plaintiff's motion for a temporary restraining order on October 5, 1989, but ordered a hearing for a preliminary injunction for Wednesday, October 25, 1989. The court, in its order, did not address defendants' motion to dismiss plaintiff's complaint. For the reasons stated herein, the court will now grant defendants' motion to dismiss, deny plaintiff's motion for a preliminary injunction, and shall enter an amended order cancelling the October 25th hearing for a preliminary injunction.

## II. DISCUSSION

### A. *PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTIVE RELIEF*

■ To obtain preliminary relief, plaintiff must show (1) irreparable harm to plaintiff if preliminary relief is not granted; (2) the balance between this harm and the injury that granting the relief would inflict on the defendant tips in favor of the plaintiff; (3) the probability that plaintiff will succeed on the merits; and (4) relief is in the public interest. 11 C. Wright & A. Miller, Federal Practice

and Procedure § 2948, at 430–31 (1973). Because plaintiff cannot establish the probability that he will succeed on the merits, his motion for preliminary relief, including a preliminary injunction, shall be denied.

### 1. *Probability of Success on the Merits*

Although plaintiff's complaint fails to articulate the grounds for his challenge, constitutional attacks on curfews imposed in an emergency fall within three categories: (1) the statute authorizing the executive to impose a curfew is unconstitutional; (2) the executive exceeded his or her authority under the statutory scheme; or (3) the statute was unconstitutional as applied. See, e.g., American Civil Liberties Union v. Chandler, 458 F. Supp. 456, 459–61 (W.D. Tenn. 1978). Plaintiff also contends that the Governor does not have the authority to impose the curfew under the Revised Organic Act of 1954.

### a. *The Governor's Authority to Impose a Curfew*

██ The Governor of the Virgin Islands has statutory authority to impose a curfew in an emergency. Section 11 of the Revised Organic Act of 1954 provides that the Governor "shall have the power to issue executive orders and regulations not in conflict with any applicable law." The Revised Organic Act of 1954, ch. 558, 68 Stat. 497 (1954).[1] Plaintiff suggests that section 11 provides an exhaustive list of the Governor's powers during a crisis or disaster. The Governor, however, has power to act under the Virgin Islands Territorial Emergency Management Act ("Act"), V.I. Code Ann. tit.

---

[1] Act of March 28, 1972, No. 3197, § 14 provides:

> Any executive order issued by the Governor relating to this Act [amending sections 24–26 of title 3] or any other executive order issued by the Governor relating to any other subject shall be reviewed by the Legislature within 15 days after issuance. The President of the Legislature shall refer such executive order to the appropriate legislative committee to determine whether such executive order conflicts with any applicable law and for recommendations for appropriate legislation on the same subject of the executive order if the legislature is in agreement with the provisions of said executive order.
> Id.

Plaintiff claims that failure to comply with this provision makes the executive order imposing the curfew null and void. There is no suggestion in the language of the statute, however, that this procedural defect voids the executive order. The statute establishes the procedure by which the Legislature can review executive orders, but does not require legislative *approval* of executive orders for such orders to be valid. Executive orders are null and void when they conflict with existing legislation, Bell v. Luis, 18 V.I. 633, 528 F. Supp. 846 (D.C.V.I. 1981), however, plaintiff has not established such a conflict here.

23, §§ 1125–1135 (Supp. 1988).[2] Under this Act, the Governor is responsible for meeting the dangers to the Virgin Islands and its people presented by emergencies or major disasters. Id. § 1125(a). The Governor may declare a state of emergency by executive order, and the state of emergency "shall continue until the Governor finds that the threat or danger has passed or that the response and recovery has progressed to the point that a state of emergency no longer exists, whereupon [he or she] shall terminate the state of emergency by Executive Order or Proclamation. No state of emergency may continue for longer than 30 days unless renewed by the Governor." Id. § 1125(c). The Governor is empowered under the Act to "[c]ontrol ingress and egress to and from an affected area [and] the movement of persons within the area" and may "[t]ake any other action [he or she] deems necessary." Id. §§ 1125(f)(7), (10).

The clear language of the Act permits the Governor to restrict the movement of citizens. The existing curfew restricts the movement of persons within the affected area, that is, the island of St. Croix. Additionally, the statute permits the Governor to take any action he deems necessary during the state of emergency. Plaintiff, therefore, would not prevail on the theory that the Governor acted without authority.

■ Moreover, the statutes authorizing the Governor's actions are constitutional. The exercise of the Governor's powers to order curfews and to restrict the movement of citizens is restricted to periods when he has ordered a civil emergency.[3] The statute limits

---

[2] The purposes of the Emergency Management Act, inter alia, are to:

 1. Reduce vulnerability of the people and communities of [the Virgin Islands] to damage, injury, and loss of life and property resulting from natural or man-made catastrophes, riots, or hostile military or paramilitary action.

 2. Clarify and strengthen the roles of the Governor and territorial agencies in prevention of, preparation for, response to and recovery from emergencies or major disasters.

 3. Prepare for prompt and efficient rescue, care and treatment of persons victimized or threatened by emergencies or major disasters.

 4. Provide a setting conducive to the rapid and orderly start of restoration and rehabilitation of persons and property affected by emergencies or major disasters.

V.I. Code Ann. tit. 23, § 1122 (Supp. 1988).

[3] The statute defines "emergency" as "imminent threat or occurrence of any hurricane, tornado, storm, flood, high-water, wind-driven water, tidal wave, tsunami, earthquake, volcanic eruption, landslide, mudslide, drought, fire, explosion, or any other emergency [which] requires an integrated and coordinated emergency response ...." Id. § 1124(a)(1).

323

the Governor's authority to restrict movement of citizens to and from, and within, "affected areas," leaving citizens free to move about nonemergency areas of the Virgin Islands, if any exist.

■■■ While first amendment rights are accorded special protection, they are not absolute. See Konigsberg v. State Bar of California, 366 U.S. 36, 49–51 (1961). The statute here permits a limitation on the exercise of such rights only in very unusual circumstances where extreme action is necessary to protect the public from immediate and grave danger. The statute is not designed to regulate in any way, nor does it have the effect of regulating, the content of speech or other form of expression. Rather, it is a regulation of conduct that is not designed to limit or control the expression of ideas but that unfortunately has an incidental impact on the exercise of first amendment rights. Likewise, freedom to travel may be subject to reasonable limitations as to time and place, and under appropriate circumstances a nocturnal curfew may be a lawful and effective means of controlling or preventing imminent civil disorder. United States v. Chalk, 441 F.2d 1277, 1283 (4th Cir.), cert. denied, 404 U.S. 943 (1971); American Civil Liberties Union v. Chandler, 458 F. Supp. 456, 458 (W.D. Tenn. 1978). The court, therefore, finds it unlikely that plaintiff will prevail on a claim that the statutes authorizing the curfew violate either his first amendment rights or his right to travel under the commerce clause.

b. *The Governor Acted within the Scope of his Authority*

■■■ Plaintiff will not prevail on his claim that the Governor acted beyond his authority by issuing a vague and overly broad order. The standard for evaluating regulations of conduct that have an incidental effect on first amendment freedoms is that the restriction can be no greater than is essential to the furtherance of the government interest that is being protected. See, e.g., United States v. O'Brien, 391 U.S. 367, 377 (1968); United States v. Chalk, 441 F.2d at 1280. The limitation on the use of emergency powers by the executive is that the declaration of a state of emergency, and the restrictions imposed pursuant to it, must appear to have been reasonably necessary for the preservation of order. United States v. Chalk, 441 F.2d at 1281 (citing Note, Judicial Control of the Riot Curfew, 77 Yale L.J. 1560, 1568 (1968)).

■■■ The imposition of a nocturnal curfew clearly falls within the Governor's emergency powers and is reasonably necessary to

324

preserve order. The Governor issued the executive order at a time of grave emergency; the aftermath of Hurricane Hugo. The curfew was enacted initially to curtail looting and further damage to persons and property. The increased problems of law enforcement during hours of darkness, compounded by the lack of electrical power on St. Croix, justified the nocturnal curfew as an effective means of controlling or preventing the threat of imminent civil disorder. See United States v. Chalk, 441 F.2d at 1283.

Current conditions on the islands still justify the nocturnal curfew. Electrical power is not yet restored—power lines are still down on the roads. Crews are working 24 hours a day to restore electrical power. The problems of law enforcement during hours of complete darkness are still present. The lack of telephone service on St. Croix makes summoning help nearly impossible during night time hours. The imposition of a nocturnal curfew not only allows work crews to work unimpeded overnight, but protects them as they restore service to the island. Additionally, the residents of the Virgin Islands are protected during the night from those who might take advantage of the emergency situation to cause injury to persons or property.

The court notes that the curfew has been imposed only during hours of darkness, when the most serious threat of crime and violence is present. The Governor has modified the hours of the curfew as conditions warranted.[4] While the curfew is a drastic measure, the court cannot say that a less restrictive measure would be sufficient to counter the grave dangers presented.

### c. Constitutionality of the Statute as Applied

The scope of review in cases challenging the constitutionality of a curfew is limited to a determination of whether the executive's actions were taken in good faith and whether there is some factual basis for the decision that the restrictions imposed were necessary to maintain order. Bright v. Nunn, 448 F.2d 245, 249 (6th Cir. 1971); United States v. Chalk, 441 F.2d at 1281; American Civil Liberties Union v. Chandler, 458 F. Supp. 456, 461 (W.D. Tenn. 1978).

There is no contention that the Governor acted in less than good faith in imposing the curfew. Hurricane Hugo and its

---

[4] The curfew on St. Thomas and St. John has been modified to the hours between 10 p.m. and 6 a.m. The curfew on St. Croix is in effect between the hours of 8 p.m. and 6 a.m.

aftermath clearly provide a sufficient factual basis for the Governor's decision that restrictions are necessary to maintain order. Reports of widespread looting and lawlessness on the island of St. Croix before the arrival of federal marshals and other personnel demonstrate that restrictions are necessary. The court finds that the Governor's actions under the statute were made with sufficient factual basis and in good faith. The court refuses to define precisely what specific conditions justify continued imposition of the curfew, because doing so will destroy the broad discretion necessary for the executive to deal with an emergency situation. See United States v. Chalk, 441 F.2d at 1280 (citing Sterling v. Constantin, 287 U.S. 378, 398 (1932)). The court notes, however, that current conditions still justify the nocturnal curfew in effect.

Because plaintiff cannot show probability of success on any of his constitutional or statutory challenges, his request for preliminary relief, including a preliminary injunction, must be denied.

### 2. *Other Requirements for Injunctive Relief*

In deciding whether to grant equitable relief, the court must consider whether the plaintiff will suffer irreparable injury if relief is denied, and whether some greater injury will accrue to the defendants or the public should injunctive relief be granted. The court recognizes that plaintiff will suffer a limitation on the exercise of his first amendment rights as long as the curfew remains in effect.[5] By its nature, the loss of first amendment rights cannot later be remedied by an award of damages. American Civil Liberties Union v. Chandler, 458 F. Supp. 456, 462 (W.D. Tenn. 1978).

Even if irreparable harm is established, however, the balance of this loss against the potential injury to the public at large should the curfew be prematurely lifted clearly tips in favor of the public's interest. Plaintiff's right to travel to visit friends, clients, and relatives at night is substantially outweighed by the public's right to be safe in their homes during hours of darkness, and to be safe from injury from continued dangerous conditions on St. Croix.

Additionally, the individual defendants will be harmed. Under the Virgin Islands Territorial Emergency Management Act, the Governor is responsible for meeting the dangers to the territory and

---

[5] However, the court notes that plaintiff is free to exercise these rights during other hours of the day and that the curfew is a temporary emergency measure that will not remain in effect for an unjustifiably extended period.

its people presented by emergencies or major disasters. V.I. Code Ann. tit. 23, § 1125(a) (Supp. 1988). Defendants will be unable to meet their governmental responsibilities if this court substitutes its judgment for that of the Governor by issuing an injunction barring enforcement of the curfew.

 Thus, even if plaintiff could establish the probability of success on the merits, his claim for equitable relief must be denied. The trivial inconvenience to plaintiff in this time of a major disaster does not outweigh the compelling interest of the government and the public in maintaining safety for all citizens.

B. *DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT*

Also pending before the court is defendant's motion to dismiss plaintiff's complaint. Defendants' brief lists four reasons for dismissal: (1) defendants were not properly served; (2) plaintiff did not allege sufficient facts to warrant preliminary relief; (3) plaintiff's claim is moot because the 6 p.m. curfew is no longer in effect; and (4) that defendants' actions were a valid exercise of the executive's police power. Thus, defendants' motion requests dismissal under Federal Rule of Civil Procedure 12(b)(4) for improper service, or in the alternative, Rule 12(b)(6) for failure to state a claim upon which relief may be granted.

 For the purposes of a motion to dismiss under Rule 12(b)(6), the complaint must be construed in the light most favorable to the plaintiff, and its allegations are taken as true. 5 C. Wright & A. Miller, Federal Practice and Procedure § 1357, at 594 (1969). However, even construing plaintiff's complaint in the light most favorable to him, plaintiff would not be entitled to relief because the pleading does not establish that the irreparable harm he suffered outweighs the compelling public interest in the protection and safety of the residents of the Virgin Islands. See supra at 11–12. The action of the Governor in declaring a curfew is a constitutional exercise of police power that is authorized by statute. See supra at 5–11.

Courts have uniformly upheld the imposition of a nocturnal curfew in periods of emergency. See Bright v. Nunn, 448 F.2d 245, 249 (6th Cir. 1971); United States v. Chalk, 441 F.2d 1277, 1283 (4th Cir.), cert. denied, 404 U.S. 943 (1971); American Civil Liberties Union v. Chandler, 458 F. Supp. 456, 462 (W.D. Tenn. 1978). Cases that address nonemergency juvenile curfews, see City

of Pandora v. Simmons, No. 87-1335 (Iowa Aug. 16, 1989); Waters v. Barry, 711 F. Supp. 1125 (D.D.C. 1989), and emergency curfews imposed only on a suspect classification of citizens, see Hirabayashi v. United States, 320 U.S. 81 (1943), are distinguishable from the instant facts and have no application here.

Dismissal of the complaint under Rule 12(b)(6), therefore, is appropriate and defendants' motion to dismiss shall be granted. The court does not reach the issue of whether service on some defendants was proper, or that modification of the St. Croix curfew makes the issue moot.

## III. *CONCLUSION*

■ The court will deny plaintiff's motion for preliminary relief, including a preliminary injunction. The court's order of October 5, 1989 shall be amended to cancel the hearing set for October 25th. The order shall also be amended to dismiss plaintiff's complaint with prejudice.

An appropriate order will be entered.

## AMENDED ORDER

This matter having come before the court on the motion of plaintiff Jeffrey Moorhead, Esq., pro se, and in the presence of Lawrence Acker, Esq., counsel for Alexander Farrelly, Godfrey DeCastro, Robert Moorhead, and Milton Frett, and Roland B. Jarvis, Esq., A.U.S.A., counsel for the United States of America; and

THE COURT having heard the testimony of the plaintiff, and having heard the legal arguments of both plaintiff and counsel for said defendants; and

For the reasons stated in the court's opinion of this date;

IT IS on this 11th day of October, 1989, hereby

ORDERED that plaintiff's motion for a temporary restraining order is DENIED;

IT IS FURTHER ORDERED that plaintiff's motion for a preliminary injunction is DENIED;

IT IS FURTHER ORDERED that the hearing set for preliminary injunction on Wednesday, October 25, 1989 is cancelled;

IT IS FURTHER ORDERED that defendants' motion to dismiss plaintiff's complaint is GRANTED, and the complaint is DISMISSED WITH PREJUDICE.·