Robert SMITH, Ernest Porter, William Pitts, Roger Kinkle, and American Civil Liberties Union of Florida, Inc., a Florida non-partisan organization, Plaintiffs,

v.

Joaquin AVINO, in his official capacity as Manager of Metropolitan Dade County, Florida; and Metropolitan Dade County, Defendants.

No. 92–2593–CIV.

United States District Court, S.D. Florida, Miami Division.

Oct. 20, 1994.

1400

Nina E. Vinik, American Civil Liberties Union Foundation of Florida, Inc., Miami, FL, for plaintiffs.

Roy Wood, Dade County Attys. Office, Miami, FL, for Joaquin Avino.

Howard M. Talenfeld, Colodny, Fass & Talenfeld, Ft. Lauderdale, FL, for Metropolitan Dade County.

## MEMORANDUM ORDER

K. MICHAEL MOORE, District Judge:

Plaintiffs bring this action under 42 U.S.C. § 1983 challenging the constitutionality of a nocturnal curfew (the "Curfew") imposed by Defendants in Dade County, Florida in the wake of Hurricane Andrew. They have moved for summary judgment on their claims that the Curfew was overbroad and unduly vague. Defendants seek dismissal on the grounds that county liability under section 1983 is not warranted and that they are immune from suit under the Eleventh Amendment.

## I. The imposition of the Curfew

■ Hurricane Andrew struck south Florida on August 24, 1992. The hurricane destroyed homes, caused widespread telephone and electrical power outages, shut down businesses, and rendered essentials such as food, fuel and medicine temporarily scarce. In anticipation of this damage, Florida Governor Lawton Chiles issued Executive Order 92–220–E on August 23, 1992 declaring a state of emergency in south and central Florida. On August 24, 1992 the Governor issued Executive Order 92–222, amending his earlier order to permit city and county officials to "control movements of persons within the emergency area by the imposition of curfews." [1]

That same day, the County Manager of Dade County, Florida, Joaquin Avino, issued a proclamation finding a clear and present danger of civil disorder in Dade County and imposing a county-wide 7 p.m. to 7 a.m. curfew for all residents. Avino issued seven proclamations over the following two months shrinking the area and time period in which the Curfew was effective. Avino ended the Curfew on November 16, 1992. [2]

■ Plaintiffs, residents of Dade County, [3] assert that the curfew violated their rights under the United States Constitution. [4] Ac-

1. Section 1 of this order stated, in pertinent part: City and County Officials are hereby *granted and delegated* the power and authority to control movements of persons within the emergency area by the imposition of curfews and other public safety measures provided in Section 870.045, Florida Statutes, to extend throughout the duration of the emergency declared by Executive Order 92–2220–E.... (emphasis added)

2. The termination of the Curfew did not moot Plaintiffs' claims because they seek recovery of damages for violations of their rights. *See Mem-phis Light, Gas & Water Div. v. Craft*, 436 U.S. 1, 8, 98 S.Ct. 1554, 1559, 56 L.Ed.2d 30 (1978).

3. The American Civil Liberties Union of Florida sues on behalf of its members who resided in Dade County at the time of the curfew.

4. Plaintiffs also sue under section 1983 for alleged violations of their rights under the Florida Constitution. These claims are not cognizable under section 1983, which protects only federal rights. *Conlogue v. Shinbaum*, 949 F.2d 378, 380–81 & n. 5 (11th Cir.1991).

cording to Plaintiffs, their lives were "profoundly aggravated" by the Curfew's suspension of their civil rights. They claim that the Curfew infringed upon, among other things, their rights of travel, expression, association and free exercise of religion. They have sued Avino and the County for these injuries.

## II. Defendants' motion to dismiss

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). They urge dismissal on the grounds that they (1) are not subject to county liability under section 1983 and (2) are immune from liability under the Eleventh Amendment.

### A. Standard for Rule 12(b)(6) dismissal

■ Rule 12(b)(6) authorizes the Court to dismiss a claim on the basis of a dispositive issue of law. *Neitzke v. Williams,* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). To dismiss on the pleadings, the Court is confined to a review of the pleadings, must accept the pleaded facts as true, and must resolve any factual issues in a manner favorable to the non-movant. *See Quinones v. Durkis,* 638 F.Supp. 856, 858 (S.D.Fla.1986). A claim is subject to dismissal only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. *H.J., Inc. v. Northwestern Bell Telephone Co.,* 492 U.S. 229, 249–50, 109 S.Ct. 2893, 2905–06, 106 L.Ed.2d 195 (1989) (quotation omitted).

### B. County liability

■ Defendants claim that neither the County nor its agent, Avino,[5] can be held liable under section 1983 because the Curfew was not an official County policy.

■ A local government, such as a county, cannot be held liable under section 1983 for its employees' acts under a theory of respondeat superior. *Monell v. Department of Soc. Serv. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978). Instead, county liability must be founded on an official policy or custom. *Id.* at 694, 98 S.Ct. at 2037. A county's "official policy or custom" is not limited to decisions made by its governing body. *Brown v. City of Fort Lauderdale,* 923 F.2d 1474, 1480 (11th Cir.1991). County policy or custom also can take the form of an isolated act by a county employee who has "final policy-making authority" with respect to that act. *Id.* Plaintiffs assert that the Curfew constituted County policy because Avino had final policy-making authority in imposing and maintaining the Curfew.

Defendants disagree. Observing that the Governor's executive order delegated to Avino the authority to issue a curfew,[6] they argue that Avino was merely acting as the Governor's agent. They conclude that the Governor, rather than the County and its County Manager, was the ultimate repository of final policy-making authority with respect to the Curfew.

Defendants' claim lacks merit. The mere fact that authority to impose the Curfew may have been delegated to Avino by the Governor is not dispositive. *See City of St. Louis v. Praprotnik,* 485 U.S. 112, 126, 108 S.Ct. 915, 925, 99 L.Ed.2d 107 (1988); *see also Church v. City of Huntsville,* 30 F.3d 1332, 1343 (11th Cir.1994) (plaintiffs failed to adduce evidence of delegation of final policy-

---

**5.** "[W]hen an officer is sued under Section 1983 in his or her official capacity, the suit is simply another way of pleading an action against an entity of which an officer is an agent." *Busby v. City of Orlando,* 931 F.2d 764, 776 (11th Cir. 1991) (quotation omitted). Accordingly, since Avino is sued in his official capacity as County Manager, he is entitled to the same protection from section 1983 liability that the County receives.

**6.** Florida law endows the Governor with authority to declare a state of emergency. Fla.Stat. § 252.36(2). The Governor has the power to control the movement of persons within an area under a state of emergency. *Id.* at 252.36(5)(g). Further, the Governor can delegate his or her power to subordinate officials: he or she is authorized to "utilize all available resources of the state government and of each political subdivision of the state, as reasonably necessary to cope with an emergency," *id.* at § 252.36(5)(b); and "[d]uring the continuance of a state of emergency[,] the Governor is commander in chief" of all "forces available for emergency duty" and "shall delegate or assign command authority." *Id.* at 252.36(4).

making authority). It is clear that Avino exercised policy-making authority. His decisions to impose and maintain the Curfew reflected a "deliberate choice to follow a course of action ... made from various alternative[ ]" means of keeping order in Dade County. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483, 106 S.Ct. 1292, 1300, 89 L.Ed.2d 452 (1986).

Avino also acted with *final* authority. The Governor's executive order did not require Avino to impose a curfew; instead, it merely authorized him to do so. Avino could have imposed a curfew even if the Governor had not declared a state of emergency: Florida law provides that, where the Governor has not declared a state of emergency, local officials may do so and may impose a curfew. Fla.Stat. §§ 870.041, 870.045(1). Finally, and most importantly, there is no evidence that Avino's decisions concerning the Curfew were reviewable by the Governor or were directly constrained by policies established by the Governor. *See Praprotnik*, 485 U.S. at 127, 108 S.Ct. at 926. Under these circumstances, the Court must conclude that Avino acted with final policy-making authority in imposing and continuing the Curfew.

Avino and the County thus can be held liable under section 1983.

### C. Eleventh Amendment immunity

▮ Defendants also raise a defense of Eleventh Amendment immunity. Individual government officials, when sued in their official capacity, are immune from suit pursuant to the Eleventh Amendment if they acted at all material times as agents or instrumentalities of the state. *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir.), *cert. denied*, 474 U.S. 1007, 106 S.Ct. 530, 88 L.Ed.2d 462 (1985). Defendants assert that they acted as agents or instrumentalities of the State of Florida because they acted under the command and authority of the Governor in his exercise of his emergency powers.

The Court disagrees. "Eleventh Amendment immunity does not extend to independent political entities, such as counties." *Tu-*

*veson v. Florida Governor's Council on Indian Affairs*, 734 F.2d 730, 732 (11th Cir.1984). There is no dispute that, as County Manager, Avino was employed and paid by Dade County. Further, as discussed above, Avino was not acting under the control of the Governor when he imposed the Curfew. Avino thus acted as an agent of the County, rather than the State. *See Hufford v. Rodgers*, 912 F.2d 1338, 1341–42 (11th Cir.1990) (county sheriff not state agent entitled to immunity), *cert. denied*, 499 U.S. 921, 111 S.Ct. 1312, 113 L.Ed.2d 246 (1991). Defendants are not entitled to Eleventh Amendment immunity.[7]

### III. Plaintiffs' motion for summary judgment

Plaintiffs seek summary judgment on two grounds. First, they claim that the Curfew was overbroad because it did not permit exceptions for after-hours travel related to work, education, health, or personal emergencies. Second, they assert that the Curfew was unconstitutionally vague because it gave police unbounded discretion to make exceptions for travel after curfew.

### A. Standard for motion for summary judgment

Federal Rule of Civil Procedure 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." To obtain summary judgment, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

▮ In assessing whether the movant has met this burden, the Court views the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* The party opposing

---

7. Because the Court concludes that Avino acted as an agent of the County and exercised final policy-making authority in imposing the Curfew, it rejects Defendants' assertion that the Governor is an indispensable party to this action.

a motion for summary judgment need not respond to it with any affidavits or other evidence unless and until the movant has properly supported the motion with sufficient evidence. *Id.* at 160, 90 S.Ct. at 1610. The moving party must demonstrate that the facts underlying all the relevant legal questions raised by the pleadings or otherwise are not in dispute, or else summary judgment will be denied notwithstanding that the nonmoving party has introduced no evidence whatsoever. *Clemons v. Dougherty County, Ga.,* 684 F.2d 1365, 1368–69 (11th Cir.1982).

## B. Overbreadth

■ Plaintiffs concede that an emergency existed in the aftermath of Hurricane Andrew, that the Governor had the authority to declare a state of emergency, and that there was a legitimate need for a curfew—albeit, a less restrictive one—to protect the residents of Dade County. They contend, however, that the curfew was unconstitutionally overbroad because it did not provide exceptions for travel for work, school, health problems or other personal emergencies.

Plaintiffs' claim invites this Court to pick and choose which elements of the Curfew were, and were not, justified by the emergency circumstances existing after Hurricane Andrew. The Court declines this proffer. In *United States v. Chalk,* 441 F.2d 1277 (4th Cir.), *cert. denied,* 404 U.S. 943, 92 S.Ct. 294, 30 L.Ed.2d 258 (1971), the mayor of Asheville, North Carolina had declared a state of emergency and imposed a nighttime curfew after a race riot had occurred. Defendants, who were arrested for driving in a car after curfew, challenged the curfew as unconstitutionally overbroad. The district court rejected this argument, and Defendants were convicted for their offense.

The Fourth Circuit affirmed the convictions. In considering Defendants' objections to the curfew, the court observed that "any decision of when and how to exercise emergency restrictions to quell existing or imminent civil disorder is a matter of judgment necessarily involving some speculation." *Id.* at 1281. "[D]ealing with ... an emergency situation requires an immediacy of action that is not possible for judges. We think it

would be highly inappropriate for us, removed from the primary responsibility for maintaining order and with the benefit of time for reflection not available to the mayor, to substitute our judgment of necessity for his." *Id.* The court continued, "[a]ttempting to precisely define under what specific conditions ... restrictions might be imposed would destroy the broad discretion necessary for the executive to deal with an emergency situation." *Id.* at 1280.

Given this, the court declined to determine whether the mayor could have controlled the city's emergency with a less restrictive curfew. Instead, it upheld the curfew because there was factual support for the mayor's declaration of emergency and the record indicated that the mayor's curfew had been imposed in good faith:

> [W]e [do not] have any means of measuring precisely the impact of any one emergency restriction on the level of or potential for violence. Whether the measures employed by the mayor ... were absolutely necessary in order to prevent a serious civil disorder is clearly an important question for political debate, but not, we think, a question for judicial resolution in this case. *It is enough, we think, that there was a factual basis for the mayor's decision to proclaim the existence of a state of emergency and that he acted in good faith.*

*Id.* at 1282 (emphasis added).

Following *Chalk,* a district court upheld a curfew imposed in circumstances remarkably similar to those in the instant case. In *Moorhead v. Farrelly,* 723 F.Supp. 1109 (D.V.I.1989), the Governor of the Virgin Islands imposed a nocturnal curfew after Hurricane Hugo laid waste to the islands of St. Croix and St. Thomas. Plaintiff, who was arrested for after-curfew travel, challenged the curfew's legality. Rejecting this claim, the court held that the curfew was constitutional because "the Governor's actions under the statute were made with sufficient factual basis and in good faith." *Id.* at 1114. The court added that it would not "define precisely what specific conditions justify continued imposition of the curfew, because doing so [would] destroy the broad discretion neces-

sary for the executive to deal with an emergency situation." *Id.*

This Court agrees with the approach taken in *Chalk* and *Moorhead.* Applying this standard, the Court observes that Plaintiffs concede that there was a factual basis for the declaration of a state of emergency in Dade County. They also have failed to adduce uncontested evidence that the Curfew, even at its broadest scope, was imposed in bad faith. In light of these facts, the Court cannot say that, as a matter of law, the Curfew was unconstitutionally overbroad.

### C. Vagueness

■ Plaintiffs' second challenge is that the Curfew was unconstitutionally vague. The basis for this claim is a provision of Avino's August 24, 1992 proclamation providing that "[a]ll persons ... are commanded to remain in their homes during the hours of curfew, *unless otherwise directed or authorized by Dade County, State of Florida, or federal officials*" (emphasis added). Plaintiffs contend that the latter clause of this declaration bestowed unguided, unfettered discretion on law enforcement officers in permitting after-hours travel.

"A law is impermissibly vague if it ... does not provide sufficiently explicit standards for those who will apply it, thereby encouraging arbitrary and discriminatory enforcement." *United States v. A Single Family Residence and Real Property Located at 900 Rio Vista Blvd., Ft. Lauderdale,* 803 F.2d 625, 630 (11th Cir.1986) (quotations omitted). In determining whether a statute provides sufficient standards for officials to follow, the "particular context" in which the law is enacted and applied "is all important." *International Soc. for Krishna Consciousness of Atlanta v. Eaves,* 601 F.2d 809, 831 (5th Cir.1979).

Avino's curfew proclamation provided sufficient guidance to police officials as to when to permit night-time travel. In the preamble, the proclamation declares that:

> as a result of the effects of Hurricane Andrew, there ... exists a clear and present danger of general public disorder,

widespread disobedience of the law, and substantial injury to persons or to property, all of which constitute an imminent threat to public peace or order and [which] cannot be quelled by ordinary means.

In light of this danger, the proclamation imposed the Curfew as a "necessary measure[ ] ... to suppress the threat to the public peace which now exists."

Read against these goals and purposes, the standards for enforcement of the Curfew were not unlawfully vague. *See, e.g., Hall v. Board of Sch. Comm'rs of Mobile County, Alabama,* 681 F.2d 965, 969 (5th Cir.1982) (context rendered it appropriate to construe allegedly vague policy as including standards set forth in other policy).[8] In *Hall,* teachers brought an action against a school board challenging two policies prohibiting visitors from entering upon school grounds without permission from school officials. The first policy read, "Final authority in visitation ... shall reside within the decision of the principal or responsible designee, keeping in mind the [school] system's obligation to the safety, welfare and education of children." 681 F.2d at 967. A second policy required individuals to receive permission to visit school grounds from a principal, "who has the prerogative of approving or denying the request to visit the school." *Id.*

The court of appeals held that these policies were not unconstitutionally vague, despite the broad discretion granted to school principals to allow visitation. The court observed that "[t]hese policies ... limit the officials' discretion to considerations of safety, welfare, and education of the children. Although general, these are sufficient standards under the premise that school administrators need broad discretion in supervising school environment when it comes to outside visitors." *Id.* at 969.

In another case, *Washington Mobilization Committee v. Cullinane,* 566 F.2d 107 (D.C.Cir.1977), demonstrators challenged a city regulation that authorized the establishment of "police lines" demarking areas of restricted public access. The regulation provided that police could establish street zones

---

**8.** *Hall* was decided by a panel of the old Fifth Circuit. *Hall,* 681 F.2d at 985 (star footnote).

excluding the public from, among other things, "the vicinity of a riot, disorderly gathering, accident, wreck, explosion or other emergency." *Id.* at 117. Citizens present at the scene of a "police line" were required to "comply with any necessary order or instruction of any police officer. No person [could] enter such area or zone unless duly authorized by the person in command on such an occasion." *Id.* The district court held that this regulation was unconstitutionally vague because it gave police unfettered discretion in establishment of, and control of people at, a police line.

The court of appeals reversed. It held that the regulation, read as a whole, sufficiently circumscribed police officers' discretionary control of the public. In particular, the regulation's command that citizens were required to comply with any "necessary" police order indicated that police discretion to issue orders was limited "to the accomplishment of the specified and properly narrow purposes of the regulation"—*e.g.*, crowd control in emergencies. *Id.* at 119.

The court also declined to require that the regulation provide specific rules governing establishment and maintenance of police lines, such as "the geographic area to be encompassed, the number of officers deployed, the means of maintaining the line against the assault, the duration of time which the line is to be maintained, and how to announce to the public the initiation of the line." *Id.* (quotation omitted). It concluded that:

> It is clear to us ... that the regulation deals only with extraordinary or emergency occasions in which substantial factors of unpredictability exist. It cannot be known, for example, how big a particular fire will be, or how widespread and violent a riot will be. Nevertheless, each of these factors would affect the duration, geographic extent and other "mechanics" of a given police line. We think the regulation's definition of the scope of discretion in functional terms is reasonable, and that meticulous specificity is not required.

*Id.*

*Hall* and *Cullinane* indicate that the stated reasons of the Curfew—the dangers of public disorder, widespread disobedience of the law, and substantial injury to persons or to property—provided sufficient "functional" guidance to police as to how they should implement the Curfew. Like *Hall*, where principals receiving requests for visitation were guided by their duty to protect the safety, welfare and education of school children, an officer receiving a request for after-curfew travel could determine whether a neighborhood was sufficiently secure so that limited travel by residents would not pose a threat of civil disorder or injury to persons or property.

Further, it is likely that the risk of civil disobedience varied widely throughout Dade County depending on the time, location and other factors. Given the inherent unpredictability of the occurrence of disorder in the County during the post-Andrew emergency circumstances, *Cullinane* indicates that functional, goal-oriented standards for enforcement of the Curfew were appropriate constraints on police discretion. Consequently, summary judgment for Plaintiffs on their vagueness claim is not warranted.

## IV. Conclusion

In light of the foregoing, the Court denies Defendants' motion to dismiss and Plaintiffs' motion for summary judgment.