**GRACE BIBLE FELLOWSHIP, INC., et al., Plaintiffs, Appellees,**

v.

**MAINE SCHOOL ADMINISTRATIVE DISTRICT # 5, Defendant, Appellant.**

No. 90–2124.

United States Court of Appeals, First Circuit.

Heard May 10, 1991.

Decided Aug. 7, 1991.

Harrison L. Richardson, with whom John B. Lucy, Richardson & Troubh, Portland, Me., and Rodney A. Smolla were on brief, Williamsburg, Va., for appellant.

Jordan W. Lorence, with whom Cimron Campbell, Mark N. Troobnick, Jane E. Hadro, Concerned Women for America Legal Foundation, Washington, D.C., Frederick M. Newcomb III, Rockland, Me., Jay Alan Sekulow, Decatur, Ga., were on brief, for appellees.

Before BREYER, Chief Judge, BAILEY ALDRICH, Senior Circuit Judge and TORRUELLA, Circuit Judge.

BAILEY ALDRICH, Senior Circuit Judge.

The single question in this case is whether, by its conduct in licensing[1] temporarily available school facilities to others for expressive activities, defendant is barred by the First Amendment from refusing parties who wish to engage in religious speech. Plaintiffs, Grace Bible Fellowship, Inc., a non-profit religious organization, and Peter Sheff, its founder and pastor, sue Maine School Administrative District # 5 (SAD 5), a public school district organized under Maine law, seeking a declaration and an injunction. Plaintiffs had sought to lease school facilities for the purpose of giving a free Christmas community dinner. SAD 5 had no objection to the dinner, but refused because, although there was to be no membership solicitation, or collection, the dinner was to be accompanied by an evangelical message, and defendant had a standing policy not to lease for activities "for the direct advancement of religion." Following a day's trial the court held that the permission defendant had extended to other activities was so broad that it had created a public forum, from which, constitutionally, it could not exclude plaintiffs. Defendant appealed. The dinner has been given, but the appeal is not mooted, as plaintiffs have a permanent injunction and are likely to request the premises again.[2]

The court's oral summary of facts, with some omissions, is as follows.

1. Grace Bible Fellowship, Inc., a non-profit religious organization, seeks, through its pastor, Rev. Peter Sheff, to use SAD 5's Rockland High School cafeteria on a weekend evening in December for a Christmas dinner. It was denied permission in 1988 and 1989. It seeks permission anew for 1990.

2. The dinner will be free and open to the public. There will be carol singing, a Santa Claus, gifts for each child, and Rev. Sheff will speak briefly on what he considers to be the true meaning of Christmas; and, according to the stipulation, shall, I quote, urge people to believe in Jesus Christ as their lord and saviour, close quote.

3. SAD ... policy, as intended and as applied in practice, is that any group may use the facilities, as long as they do not seek to propagate or propound a religious message....

4. The justification for the policy as applied to the exclusion of religious groups is ... specifically, to avoid an unconstitutional establishment of religion, to avoid community divisiveness, controversy, and avoid any identification of the school with religion.

.     .     .     .     .

9. Use of the high school by a group that would promote a religious message, as Grace Bible proposes to do, is opposed by some member[s] of the community and will therefore be controversial and divisive for them. Others do not object, and for them it will not be controversial or divisive.

The court could have added the obvious, that the exclusion itself was divisive. *Cf. Board of Education v. Mergens,* — U.S. ——, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990), *post.*

After a thoughtful review in light of the appropriate Supreme Court decisions as applied to the facts as it further spelled them out, the court reached the following conclusions.

---

**1.** The exact legal term is not important, but there is a writing, a charge is made, and conditions are specified.

**2.** The injunction forbids defendant's denying use to plaintiffs "for religious expression so long as MSAD # 5 maintains its public forum."

SAD 5 has created a designated public forum in off-school hours in the use of its school facilities and, in particular, the high school building and cafeteria; SAD 5 has no compelling state interest for excluding occasional use of the forum by a religious group or a group with a religious message; SAD 5, therefore, cannot exclude the proposed religious use in this case.

■ The guiding legal principles are simple, and undisputed. That the school is, in effect, state property does not require that it be a forum for speech. *United States v. Kokinda*, —— U.S. ——, 110 S.Ct. 3115, 3119, 111 L.Ed.2d 571 (1990). However, the state may choose to "open[ ] for use by the public as a place for expressive activity. The Constitution forbids a State to enforce certain exclusions from a forum generally open to the public even if it was not required to create the forum in the first place." *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983). In such event, "[r]easonable time, place, and manner regulations are permissible, [but] a content-based prohibition must be narrowly drawn to effectuate a compelling state interest." *Id.* at 46, 103 S.Ct. at 955.

Alternatively, "a public forum may be created for a limited purpose, such as use by certain groups," *id.* at 46 n. 7, 103 S.Ct. at 955 n. 7, but this means for an affirmative state interest. *Greer v. Spock*, 424 U.S. 828, 840, 96 S.Ct. 1211, 1218, 47 L.Ed.2d 505 (1976). While we depart somewhat from the court's analysis, we believe its findings and conclusion denying the applicability of this alternative are clearly correct, whether defendant be judged by its conduct, or by its published policy. We therefore affirm.

We start with defendant's actions, as actual practice speaks louder than words.[3]

Even a partial list of recent users, and the purposes for which they used the school facilities, is revealing. The American Association of Retired People sought members, as did Up With People. Kitchen and Meeting Room People held suppers to benefit a community kitchen (stipulated by defendant to be "expressive activity"). Other charities, such as Pen Bay Hospital, and Hospitality House, conducted various fundraising enterprises. United Parcel Service held a meeting to solicit employees.[4] As against this broad permission, far beyond educational, or student, interest, defendant is unable to cite an example within memory of a refusal to any group other than to religious organizations. The reply to our remark during oral argument that anyone could be promoted except Jesus, that all religions were excluded, did not mean that a broad access forum was legally limited.

Defendant is in no different position under the terms of its published Policy Considerations, properly read. That provides as follows,

(1) The facilities of the School District should continue not to be open forums available for indiscriminate use by the general public. Rather, access to school facilities should be limited to uses reasonably compatible with the mission and function of the school district in the community.

(2) Activities directly connected to the educational mission of the school should continue to receive priority over all other uses.

(3) School facilities are community assets, and their utility should be maximized to the extent consistent with the mission and function of the schools.

(4) The School District plays an important role as a positive social force in promoting community cohesiveness and stability, and policies governing facilities use should reflect that role.

---

**3.** Defendant's brief speaks often of its expressed intent. Manifestly, if there is a conflict, it is to be judged by what it does, not by what it says. *See Concerned Women for America v. Lafayette County*, 883 F.2d 32, 34 (5th Cir.1989).

**4.** In disagreement with the district court, we do not consider use by political parties, organizations, or individuals, since this is a use imposed

on defendant by statute. Me.Rev.Stat. 20–A, § 1001(4) (1990). By placing this special obligation on defendant the legislature did not create a public forum. By the same token, it would be unfair to penalize, or charge defendant with this use if it were otherwise conducting a limited forum.

(5) Because the School District serves equally children of all racial and ethnic groups, and from families of all religious affiliations, the School District should maintain a stance of strict neutrality on matters such as religion.

The pronouncement in the first sentence of section (1) denying indiscriminate use is incipiently weakened by the sentence following. It is contradicted by sections (3) and (4). Defendant's contention that its forum is limited, like *Perry's*, neglects to read that opinion fully, particularly a significant quote. "[U]se by the Girl Scouts, the local boys' club, and other organizations that engage in activities of interest and educational relevance to students ... would not as a consequence ... [be] open." *Perry,* 460 U.S. at 48, 103 S.Ct. at 956. These activities could well be within the "mission and function of the schools." Defendant's announced, and demonstrated, mission, is the "community;" something quite different. The community is the neighborhood, the public. For what it is worth, plaintiff Sheff testified that he asked permission to give "a community dinner." More to the point, a state representative who attended plaintiffs' 1988 dinner in the adjoining town of Thomaston, testified that they had "talked about everything we all talk about in our community." A hospital administrator testified that meetings concerning proposed by-laws were held to get "community views." Up With People sought "community involvement."

A policy, however well meant, to give access to whatever is good for the community, unless, in the judgment of the school board, it is injurious to the school, is not in any legal or practical sense limited, but is selection, and, if based on word content, censorship.[5] In fact some might think that excluding religion while permitting all else "would demonstrate not neutrality but hostility towards religion." *See Board of Education v. Mergens,* —— U.S. ——, 110 S.Ct. 2356, 2371, 110 L.Ed.2d 191 (1990).

Some, also, might think that defendant's fear of being thought non-neutral is unwarranted; that high school students are not lacking in sophistication, and would realize the school was not a participant. *Id.* 110 S.Ct. at 2372.[6] At the same time, it is possible to sympathize with defendant's thinking; it may have special reasons for fearing local sensitivity. And the matter being pivotal on a constitutional issue, the district court's finding defendant's reasons not to be of a compelling nature would be subject to our full, *de novo,* review. *New Life Baptist Church Academy v. Town of East Longmeadow,* 885 F.2d 940, 942 (1st Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1782, 108 L.Ed.2d 784 (1990).

■ The question, however, is not presented. If its establishing a public forum solely advanced school interests, there could be a First Amendment conflict to be resolved. Compare *Cornelius v. NAACP Legal Defense and Educ. Fund, Inc.,* 473 U.S. 788, 105 S.Ct. 3439, 87 L.Ed.2d 567 (1985) (finding a "limited" forum where the government created the forum to advance certain limited, special purposes of its own). But SAD 5 provides the forum, not simply for educationally-related purposes, but as a service to the community. That being so, SAD 5, being a government arm, has no greater right to pick and choose among users on account of their views than does the government in general when it provides a park, or a hall, or an auditorium, for public use. The bare fact is, SAD 5 has volunteered expressive opportunity to the community at large, excluding some because of the content of their speech. This is elementary violation. Private citizens can freely choose the recipients of their benefactions; the state has restrictions. One of these is the First Amendment.

*Affirmed.*

---

5. It is, of course, of no consequence that defendant does not discriminate on the basis of the particular religious viewpoint, but only on the subject. *Carey v. Brown,* 447 U.S. 455, 462 n. 6, 100 S.Ct. 2286, 2291 n. 6, 65 L.Ed.2d 263 (1980).

6. Defendant, properly, does not contend that opening the forum to religious expression would violate the establishment clause. *Widmar v. Vincent,* 454 U.S. 263, 270–75, 102 S.Ct. 269, 274–77, 70 L.Ed.2d 440 (1981).