IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 99-31071
Consolidated with No. 99-31140

_____

SALLY CAMPBELL;
LOUISIANA CHRISTIAN COALITION,

                                        Plaintiffs-Appellees,

                        versus

ST. TAMMANY'S SCHOOL BOARD; EDDIE FIELDING, in his official capacity as a member of the St. Tammany Parish School Board; A.R. SMITH, in his official capacity as a member of the St. Tammany Parish School Board; Also known as Smitty Smith; GREGORY J. SAURAGE, in his official capacity as a member of the St. Tammany Parish School Board; DONALD J. VILLERE, in his official capacity as a member of the St. Tammany Parish School Board; PATTI YOUNG, in her official capacity as a member of the St. Tammany Parish School Board; DANIEL G. ZECHENELLY, in his official capacity as a member of the St. Tammany Parish School Board; BETTY VERZWYVELT, in her official capacity as a member of the St. Tammany Parish School Board; JOHN C. LAMARQUE, in his official capacity as a member of the St. Tammany Parish School Board; E. ROTH ALLEN, in his official capacity as a member of the St. Tammany Parish School Board; JAMES PANKS, SR., in his official capacity as a member of the St. Tammany Parish School Board; also known as Ronnie Panks, Sr.; ANTHONY TEDESCO, also known as Tony Todesco, in his official capacity as a member of the St. Tammany Parish School Board; RAY A. ALFRED, in his official capacity as a member of the St. Tammany Parish School Board; MARY K. LYNCH, in her official capacity as a member of the St. Tammany Parish School Board; CHARLES T. HARRELL, in his official capacity as a member of the St. Tammany Parish School Board; NEAL M. HENNEGAN, in his official capacity as a member of the St. Tammany Parish School Board; LEONARD P. MONTELEONE, in his official capacity as Superintendent of St. Tammany Parish School Board; WILLIAM B. BRADY, in his official capacity as Administrative Supervisor of St. Tammany Parish School Board,

                                        Defendants-Appellants.

_____

---

March 9, 2000

Before POLITZ, JOHN R. GIBSON,[*] and HIGGINBOTHAM, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

This is a First Amendment challenge to St. Tammany's School District's building use policy, which prohibits non-student uses involving religious worship or religious instruction. The District appeals the district court's judgment that the policy is unconstitutionally vague. Because we find that the terms "religious instruction" and "religious worship" used in the policy have understandable meaning and have not been inconsistently applied by the District, we REVERSE the grant of summary judgment for the plaintiffs, Sally Campbell and the Louisiana Christian Coalition. We also grant summary judgment to the District, holding that its use policy is viewpoint neutral consistent with the First Amendment.

I

St. Tammany's School District developed a written use policy for non-student groups who wish to use school facilities after hours. That policy permits buildings to be used for civic, recreational and entertainment purposes that are open to the public and pertain to the "welfare of the public." It does not permit

---

[*] Circuit Judge of the Eighth Circuit, sitting by designation.

partisan political activity or for-profit fund-raising. At issue in this case, the policy also forbids uses involving "religious services or religious instruction" but permits discussions of religious material or material containing a religious viewpoint.

In June 1998, Sally Campbell and the Louisiana Christian Coalition requested use of school facilities for a "prayer meeting" at which the group planned

> to worship the Lord in prayer and music. . . . to discuss family and political issues, pray about those issues, and seek to engage in religious and Biblical instruction with regard to those issues.

The District denied the request, citing the policy, and this suit followed. The parties filed cross-motions for summary judgment. The district court granted summary judgment to Campbell, holding that the policy was facially vague. After an unsuccessful motion for new trial or motion for stay of judgment, the District timely appealed.

## II

The district court held that the District's policy was unconstitutionally vague. The district court concluded that there was no intelligible way of determining when speech involving religious material or with a religious viewpoint, permitted by the policy, crossed over into religious instruction, forbidden by the policy. The court also noted that there was no definition of "religious worship" provided in the policy. We review these questions of law de novo.

3

A rule is unconstitutionally vague if "men of common intelligence must necessarily guess at its meaning and differ as to its application."[1] For example, in Hall v. Board of School Commissioners, the court held that a school's rule regarding the distribution of political material was vague where approval turned solely on an administrator's unguided discretion.[2] Even if a rule is understandable, it also may fail vagueness analysis if it is inconsistently or arbitrarily applied.[3]

The policy here does feature specific prohibitions. Thus, unlike the disallowed policy in Hall, the District's policy does not consist of an administrator's whims. Campbell claims that the terms used, however, are so unclear as to be unconstitutionally vague. As applied to Campbell's request, which includes verbatim some of the prohibited terms, the policy is not even arguably vague. The group planned to "worship the Lord in prayer and music" and "engage in religious and Biblical instruction." There can be no doubt that these activities are included within the policy's disallowed uses.

Further, Campbell makes no showing that the District has arbitrarily applied the statute to her group. The accepted applications that had been made on behalf of religious groups were

---

[1]Connally v. General Const. Co., 269 U.S. 385, 391 (1926).

[2]681 F.2d 965, 967-68 (5th Cir. 1982).

[3]Dallas Assn. of Community Org.'s For Reform Now v. Dallas County Hosp. Dist., 670 F.2d 629, 633 (5th Cir. 1982).

4

musical concerts or banquets, activities distinguishable from a prayer meeting.  Having expressly requested a school building for uses disallowed by the policy, Campbell is hard-pressed to make an as-applied claim of unconstitutional vagueness.[4]

As a facial challenge, we fail to see how the terms "religious instruction" and "religious worship" would provoke confusion amounting to unconstitutional vagueness.  There is a clear core meaning.  The terms have a common meaning such that people can use them without particular difficulty.  While the language might be subject to ambiguity at the margins -- for example, the line between instruction and discussion may blur at the edges -- that effect is no more than the limits of language stretched by the active imagination of hypothesized application.  To the point, we are not persuaded of uncertainty sufficiently chilling of speech to find the policy to be substantially overbroad.[5]

Campbell points to the deposed school administrators' desire to define the terms contextually as evidence that the terms are vague.  A term may take meaning from its context, however, without being unconstitutionally vague.  One court, in rejecting a claim of vagueness regarding the same terms, wrote:

---

[4]Campbell also cites various licensing cases describing procedural safeguards.  She does not explain why those rules apply here, or what procedural injury she suffered: the request was handled in a timely way and involved review by higher-ups.

[5]See Los Angeles Police Dept. v. United Reporting Publ'g Corp., 120 S. Ct. 483, 489-90 (1999).

> [T]he terms "religious services and religious instruction" have a common meaning such that people of ordinary intelligence -- perhaps after some thought -- can understand what conduct is prohibited. A performance of Handel's Messiah, for example, need not be a religious service. It depends upon the context and purpose for which it is performed.[6]

The testimony from school administrators in the record reflects such a common-sense, contextual understanding of "religious instruction" and "religious worship". School board member Edward Fielding stated that "religious worship" included a program that acknowledges God and involves religious activities such as song, prayer and Bible study. Superintendent Leonard Monteleone gave examples of "religious instruction" as including "interpretations of Bible readings" and "practices within a certain denominational faith." While the District's ability to describe the contested terms does not determine whether the policy is vague, it does illustrate that the terms have everyday, understandable meanings. We reject Campbell's claim that the policy is unconstitutionally vague.

III

---

[6]_Trinity United Methodist Parish v. Board of Educ._, 907 F. Supp. 707, 718-19 (S.D.N.Y. 1995).

Both parties argue that this court should grant summary judgment on First Amendment grounds,[7] an issue on which they had filed cross-motions for summary judgment in the district court.

The first question is where the District's policy falls in the Supreme Court's forum analysis. The right to speak on public property is largely dependent on the nature of the forum in which the speech is delivered. If the government has designated a forum as public, even if it was not traditionally public, the government's exclusion of a group from the forum is subject to strict scrutiny. If the government has not so opened the forum, the government may exclude groups as long as that exclusion is reasonable and viewpoint neutral.[8]

To avoid strict scrutiny, the District's policy thus must not have created a public forum. Although a school is not a traditional public forum, a district may designate it as such by indiscriminately permitting use by the public at large for assembly and speech.[9] A school may selectively open itself to some public

---

[7]Campbell also makes a passing equal protection claim that is indistinguishable from her First Amendment claim. She further claims that the policy violates the Religion Clauses of the First Amendment but provides no evidence of how the policy hinders her free exercise or excessively entangles the District in religious affairs.

[8]See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 103 S. Ct. 948, 954-55 (1983).

[9]See Perry, 103 S. Ct. at 954.

use, however, without creating a designated public forum.[10]  In such cases, the government may restrict access to certain kinds of groups or to the discussion of certain topics.[11]

At some point, the allowance of a sufficiently wide variety of uses creates a designated public forum.[12]  Before us is the question of where this line should be drawn.  In cases where courts have held that schools had created a public forum, the school's access policy was completely open except for a religious prohibition.[13] The Second Circuit held in <u>Bronx Household v. Community School District</u> that a policy forbidding meetings sponsored by political organizations, religious services and religious instruction did not create a designated public forum.[14]

---

[10]<u>See id.</u> at 956 (discussing use of school mailboxes by various organizations).

[11]<u>See</u> <u>Rosenberger v. Rector & Visitors of Univ. of Va.</u>, 115 S. Ct. 2510, 2516-17 (1995). The Court has variously labeled such access a "non-public" or "limited public" forum.  <u>See</u> <u>Rosenberger</u>, 115 S. Ct. at 2516; <u>Lamb's Chapel v. Center Moriches Union Free Sch. Dist.</u>, 113 S. Ct. 2141, 2147 (1993).

[12]<u>See</u> <u>Lamb's Chapel</u>, 113 S. Ct. at 2146 & n.5.

[13]<u>See</u> <u>Widmar v. Vincent</u>, 454 U.S. 263, 265, 267 (1981); <u>Grace Bible Fellowship, Inc. v. Maine Sch. Admin. Dist. No. 5</u>, 941 F.2d 45, 46-47 (1st Cir. 1991).

[14]127 F.3d 207, 210 (2d Cir. 1997).  In <u>Lamb's Chapel</u>, the Supreme Court noted that there was a strong argument that the school district had created a public forum through its broad use policy, which was essentially identical to that in <u>Bronx Household</u>. In <u>Lamb's Chapel</u>, however, the Court found particularly relevant that the district had permitted a lecture by a New Age religious group.  <u>See</u> <u>Lamb's Chapel</u>, 113 S. Ct. at 2143-44, 2146 n.5.  The case was decided on other grounds.

The District's use policy, which excludes partisan political activity, for-profit fund-raising, and the religious activities at issue, creates few limitations on use and skates close to establishing a designated public forum. Unlike the policies held to have created a public forum through indiscriminate use, however, the District's policy prohibits several types of uses; the District's policy restricts more types of uses than the use policy held not to have created a public forum in Bronx Household.[15] The policy's restrictions indicate that the school's purposes in allowing some public use have not reached the point at which any use – save targeted religious activities – is allowed. We are thus persuaded that the restrictions are minimally sufficient to maintain the school buildings' status as a non-public forum.

Campbell contends that the District's policy does not pass muster even under the analysis applicable to non-public forums. If a school allows limited public access, the limits must reasonably relate to the purposes of the forum and may discriminate only on the basis of content, not viewpoint.[16] The government may not exclude a speaker with a religious viewpoint if it has permitted

---

[15]Concerned Women for America v. Lafayette County, 883 F.2d 32 (5th Cir. 1989), is not controlling here. First, the case decided only that the plaintiffs' showed a substantial likelihood of prevailing on their claim that a library had created a public forum. Concerned Women, 883 F.2d at 34. Second, the forum at issue was not a school, which is presumptively not a public forum unless the government designates it as such, but a public library.

[16]See Rosenberger, 115 S. Ct. at 2517.

other speakers on similar topics.[17]  Campbell claims both that the policy discriminates on viewpoint and that the District has already permitted other speakers on similar topics.

First, Campbell contends that the exclusion of religious services and religious instruction is viewpoint discrimination, not content discrimination.  In <u>Lamb's Chapel v. Center Moriches Union Free School District</u>, the exclusion of a meeting on a subject permitted by a school district was unconstitutional because it was disallowed only because of the speaker's religious viewpoint.[18] This does not mean that any ban on religious activities amounts to viewpoint discrimination.  Religion may be either a perspective on a topic such as marriage or may be a substantive activity in itself.  In the latter case, the government's exclusion of the activity is discrimination based on content, not viewpoint.

The <u>Bronx Household</u> court held that religious services and religious instruction are activities which may be excluded as content-based discrimination.[19]  We agree with this approach, finding that religious services and instruction are not simply approaches to a topic, but activities whose primary purpose is to teach and experience the subject of religion.  These are activities distinct from a topical discussion, a social gathering, or a

---

[17]<u>See</u> <u>Lamb's Chapel</u>, 113 S. Ct. at 2147; <u>Gregoire v. Centennial Sch. Dist.</u>, 907 F.2d 1366, 1374-75 (3d Cir. 1990).

[18]<u>Lamb's Chapel</u>, 113 S. Ct. at 2147-48.

[19]<u>Bronx Household</u>, 127 F.3d at 215.

10

political meeting.[20]  The District has excluded such religious activities but does not forbid speakers on general topics with a religious perspective -- a distinction that viewpoint neutrality permits.

Finally, Campbell argues that the District has already opened the property for religious uses by permitting a church banquet and a gospel choir.  While these groups may have had religious affiliations, the events involved no religious instruction and were not prayer meetings.  We are not persuaded that the District has already permitted speakers on similar topics.

We hold that the District's use policy complies with the First Amendment as being neither unconstitutionally vague nor viewpoint discriminatory.

REVERSED.

---

[20]See Rosenberger, 115 S. Ct. at 2517 (distinguishing religion as a subject matter from religion as a viewpoint).