IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No. 99-31071
Consolidated with No. 99-31140

SALLY CAMPBELL;
LOUISIANA CHRISTIAN COALITION,

Plaintiffs-Appellees,

versus

ST. TAMMANY PARISH SCHOOL BOARD; EDDIE FIELDING, in his official
capacity as a member of the St. Tammany Parish School Board; A.R.
SMITH, in his official capacity as a member of the St. Tammany
Parish School Board; Also known as Smitty Smith; GREGORY J.
SAURAGE, in his official capacity as a member of the St. Tammany
Parish School Board; DONALD J. VILLERE, in his official capacity as
a member of the St. Tammany Parish School Board; PATTI YOUNG, in
her official capacity as a member of the St. Tammany Parish School
Board; DANIEL G. ZECHENELLY, in his official capacity as a member
of the St. Tammany Parish School Board; BETTY VERZWYVELT, in her
official capacity as a member of the St. Tammany Parish School
Board; JOHN C. LAMARQUE, in his official capacity as a member of
the St. Tammany Parish School Board; E. ROTH ALLEN, in his official
capacity as a member of the St. Tammany Parish School Board; JAMES
PANKS, SR., in his official capacity as a member of the St. Tammany
Parish School Board; also known as Ronnie Panks, Sr.; ANTHONY
TEDESCO, also known as Tony Todesco, in his official capacity as a
member of the St. Tammany Parish School Board; RAY A. ALFRED, in
his official capacity as a member of the St. Tammany Parish School
Board; MARY K. LYNCH, in her official capacity as a member of the
St. Tammany Parish School Board; CHARLES T. HARRELL, in his
official capacity as a member of the St. Tammany Parish School
Board; NEAL M. HENNEGAN, in his official capacity as a member of
the St. Tammany Parish School Board; LEONARD P. MONTELEONE, in his
official capacity as Superintendent of St. Tammany Parish School
Board; WILLIAM B. BRADY, in his official capacity as Administrative
Supervisor of St. Tammany Parish School Board,

Defendants-Appellants.

Appeals from the United States District Court
for the Eastern District of Louisiana

July 24, 2002

ON REMAND FROM THE SUPREME COURT OF THE UNITED STATES

Before JOHN R. GIBSON[*] and HIGGINBOTHAM, Circuit Judges.

PER CURIAM:[**]

In this First Amendment challenge to St. Tammany's School District's facilities use policy, the defendants appealed to this Court the district court's award of summary judgment in favor of plaintiffs Sally Campbell and the Louisiana Christian Coalition on the grounds that the policy was unconstitutionally vague. We reversed the district court and granted summary judgment for the defendants.[1] We denied panel rehearing and this Court denied rehearing *en banc*.[2] The United States Supreme Court granted application for writ of certiorari filed by the plaintiffs, vacated our prior opinion, and ordered that the case be "remanded to the United States Court of Appeals for the Fifth Circuit for further consideration in light of *Good News Club v. Milford Central School*,[3] 533 U.S. 98 (2001)."[4]

While the case was *sub judice*, the country and this court suffered a great loss with the death of Judge Politz, leaving the

---

[*] Circuit Judge of the Eighth Circuit, sitting by designation.

[**] This case is decided by a quorum. 28 U.S.C. § 46(d).

[1] *Campbell v. St Tammany's Sch. Bd.*, 206 F.3d 482 (5th Cir. 2000)

[2] *Campbell v. St. Tammany Parish Sch. Bd.*, 231 F.3d 937 (5th Cir. 2000) (per curiam).

[3] 121 S. Ct. 2093 (2001).

[4] *Campbell v. St. Tammany's Sch. Bd.*, 121 S. Ct. 2518 (2001).

panel with only one active member of this court. The district court has not had the opportunity to consider the case in light of *Good News Club*, including any change in positions by the parties as well as any further development of the record. Given these circumstances we are persuaded that the best approach is to remand to the district court for consideration in light of the intervening decision of the Supreme Court.

REMANDED.

JOHN R. GIBSON, Circuit Judge, concurring.

I concur with the decision to remand for reconsideration in light of Good News Club v. Milford Central School, 121 S. Ct. 2093 (2001), but wish to add my views on the critical issue in this case.

There are significant differences between the facts of Good News Club, Rosenberger v. Rector and Visitors of the University of Virginia, 515 U.S. 819 (1995), and Lamb's Chapel v. Center Moriches Union Free School District, 508 U.S. 384 (1993), on the one hand, and this case, on the other. In each of the three Supreme Court cases, the governmental decision-maker characterized the applicant's proposed activities as religious based on the applicant's viewpoint, rather than the subject matter presented, and impermissibly denied permission to use governmental facilities on the strength of that characterization.

In Rosenberger, the University of Virginia paid certain costs for student-run organizations that were deemed to serve the educational purpose of the university. News organizations were deemed educational. However, otherwise eligible organizations were subject to exclusion if their activities were "religious." Wide Awake Publications published a newspaper with a Christian editorial perspective. Because the University concluded that Wide Awake's editorial perspective rendered it a "religious activity," the University denied Wide Awake moneys that it would otherwise have qualified for. The Supreme Court held that the University's decision was impermissible viewpoint discrimination, based on the editorial perspective of the newspaper, not on its subject matter. 515 U.S. at 830-31.

Similarly, in Lamb's Chapel, New York law allowed school boards to open school property for certain enumerated uses, including social, civic and recreational meetings and entertainments, and other uses pertaining to the welfare of the community." 508 U.S. at 386. Lamb's

5

Chapel proposed to take advantage of this opportunity to use school property to show a series of films discussing child-rearing from a Christian perspective. The school district denied the Chapel's application, saying, "This film does appear to be church related and therefore your request must be refused." Id. at 389. Again, the governmental denial of access was viewpoint related, rather than subject matter related: "The film series involved here no doubt dealt with a subject otherwise permissible under Rule 10, and its exhibition was denied solely because the series dealt with the subject from a religious standpoint." Id. at 394.

Good News Club continued the same pattern. An applicant was denied permission to use school property because the government viewed the applicant's approach as "in fact the equivalent of religious instruction itself." 121 S. Ct. at 2098. As in Lamb's Chapel and Rosenberger, the governmental actor critically assessed the applicant's use and decided that it did not fall within the permitted uses of the limited forum because of the

6

religious aspect of an otherwise eligible activity. The Supreme Court held that the school's decision was impermissible viewpoint discrimination: "[W]e reaffirm our holdings in Lamb's Chapel and Rosenberger that speech discussing otherwise permissible subjects cannot be excluded from a limited public forum on the ground that the subject is discussed from a religious viewpoint." Id. at 2102.

In contrast to these three Supreme Court cases, the facts before us involve no need for the school officials to impose their own characterization on the applicant's proposed use. The policy in St. Tammany's prohibited use for "religious services or religious instruction," among other subjects, but specifically permitted use of school facilities by outside groups "for the purpose of discussing religious material or material which contains a religious viewpoint." (Dist. Ct. op. at 2). As we held in the original panel opinion, this policy establishes a limited public forum. Campbell v. St. Tammany's Parish Sch. Bd, 206 F.3d 482, 486-87 (5th Cir.

7

2000).  Campbell sought permission to hold a "prayer meeting," at which she proposed to "worship the Lord in prayer and music."  As to this much of Campbell's proposal, there was no need for St. Tammany's to engage in a critical assessment of how to characterize the proposal.  It was on its face a proposal to engage in "religious services," a subject matter for which the school district had not made its property available.  This was not an otherwise eligible activity, which the school district decided to exclude because of the viewpoint from which ideas would be expressed.  Therefore, in this respect, Campbell's case differs importantly from the Supreme Court cases on which she relies.

It is true that Campbell's letter went on to say that the prayer meeting would also involve discussion, prayer and instruction with regard to family and political issues.  (Dist. Ct. op. at 3).  This language, however, does not bring the request as a whole within the subject

8

matter of the limited public forum established by St. Tammany's.